THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BRIAN SCOTT REID, SR,<br><br>Petitioner,<br><br>v.<br><br>ROBERT POWELL,<br><br>Respondent. | **MEMORANDUM DECISION & ORDER DISMISSING HABEAS PETITION**<br><br>Case No. 2:21-CV-470-RJS<br><br>Chief District Judge Robert J. Shelby |

In this federal habeas corpus case, *pro se* inmate Brian Scott Reid,[1] ("Petitioner") attacks his conviction for being "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.S. § 2241 (2023). 28 U.S.C.S. § 2254 (2023) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Respondent has moved to dismiss the claim with prejudice arguing that all of Petitioner's claims are procedurally defaulted. Having carefully considered the Petition and exhibits, (ECF No. 15-6); the Respondent's motion to dismiss and exhibits, (ECF No. 37); and, Petitioner's response to the motion to dismiss (ECF No. 41), the Court concludes that Petitioner has procedurally defaulted all issues. Respondent's motion to dismiss with prejudice is therefore granted. The Petition is therefore dismissed with prejudice.

---

[1]Because Petitioner is *pro se*, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id*.

1

# I. BACKGROUND

Petitioner is currently serving an indeterminate sentence of five years to life in Utah state prison stemming from convictions for rape, forcible sodomy, forcible sexual abuse, and witness tampering. The Utah Court of Appeals has provided the following summary of the case background:

> The victim, [Victim], lived in her grandmother's house, along with other family members including her uncle, [Petitioner]. Due to a learning disability, [Victim] had been enrolled in special education classes until she finished high school. At twenty-three years old, [Victim] did not have a job but helped her grandmother with household chores. [Victim]'s bedroom was located in the basement, down the hall from the room [Petitioner] shared with his wife.
>
> At trial, [Victim] testified that [Petitioner] sexually assaulted her in her bedroom. She was folding clothes and watching a movie when [Petitioner] walked in and said, "[L]et's see what my teddy bear feels like." [Victim] testified that [Petitioner] grabbed her, pushed her onto her bed, and lay down beside her. [Victim] asked him what he was doing and "told him nicely to please get out," but [Petitioner] told her his back hurt and he just needed to relax. [Petitioner] then slipped his hands underneath her shirt and bra and grabbed her breasts. [Victim] told him to stop, but [Petitioner] whispered, "Be quiet or I'm going to harm you."
>
> According to [Victim], [Petitioner] then grabbed her by her legs and pulled her to the foot of the bed. He pulled down her pants and underwear, held her down with his hands on her thighs, and licked her "down there." She told him to stop and tried to push herself up, but he was holding her down with his weight and told her to be quiet. [Petitioner] then coated his penis with lotion and had inserted it "halfway" into her vagina when [Victim] managed to push him away. [Victim] told [Petitioner] to get out of her room and he left, but only after he threatened to harm her if she told anyone about the assault.
>
> At the hospital, [Victim] told the examining nurse that [Petitioner] had grabbed her, laid her on the bed, and then lay down beside her and "started doing uncomfortable things." She stated that [Petitioner] had pulled down her pants and underwear and grabbed her breasts "really hard" under her clothes. [Victim] said she told [Petitioner] to stop, but he threatened to hurt her if she screamed. [Victim] told the nurse that [Petitioner] "shoved his dick inside" her, but she pushed him off. Before he left the room, however,

2

[Petitioner] threatened to harm her if she told anyone. In response to the nurse's specific questions, [Victim] stated that there had been penetration, that lotion had been used as lubrication, and that [Petitioner]'s mouth had been in contact with her genitalia.

After gathering this information, the nurse conducted a physical examination. The nurse noted and photographed a blue and purple circular bruise on [Victim]'s left outer thigh. The bruise measured 2.5 centimeters, consistent with the size of a fingertip. Photographs from the pelvic examination also revealed some redness at the entrance to [Victim]'s vagina. The nurse testified that her findings during the physical examination were consistent with the information [Victim] disclosed about the assault.

During the examination, the nurse also collected separate swabs for testing from the external parts of [Victim]'s genitalia, referred to as the vulvar [sic], and from inside her vagina. Both the vulvar swabs and the vaginal swabs tested positive for the presence of saliva as well as male DNA that matched [Petitioner]'s profile. 1 1 In briefing and at oral argument, the State suggested that the DNA came from semen found on [Victim]'s body during the examination. There is no evidence that any semen, let alone semen matching [Petitioner]'s DNA profile, was detected. The vaginal swab tested negative for the presence of a protein found in semen, and the vulvar swab was inconclusive. Given the inconclusive result, the DNA from the vulvar swab was processed using a specific extraction method designed to separate sperm cells from epithelial (skin) cells. The laboratory technician testified that the DNA matching [Petitioner]'s profile was found in the "epithelial faction" of the vulvar swab. There was no testimony as to whether any sperm cells were successfully extracted.

Two detectives were assigned to the case and spoke briefly with [Victim] immediately after her examination. The detectives told her not to return home until [Petitioner] was out of the house. With the help of the Legal Aid Society of Salt Lake, [Victim] later petitioned for and received a protective order against [Petitioner] to keep him away from her grandmother's house.

Detectives interviewed [Petitioner] later that day. [Petitioner] initially told the detectives that he did not know why he was being interviewed and could not remember what had happened the day before. [Petitioner] denied having any interaction with [Victim] on the date of the alleged sexual assault, but he later recalled speaking with her in the hallway outside of his bedroom. He maintained that he did not go into [Victim]'s room and did not have any sexual relations with her. He told the detectives that his wife suspected him of having an affair and was "setting him up" by having [Victim] make false accusations.

> The following week, detectives formally interviewed [Victim] During this interview, [Victim] mentioned the use of lotion and the fact that she had been watching a movie at the time of the assault. [Victim] also pointed out that she had developed additional bruises on her legs since the assault, which the detectives then photographed. At trial, [Victim] testified that some of the bruising shown in the photographs occurred earlier from an unrelated incident, but that the remaining bruises had not been there before the sexual assault. She testified that the new bruises were in the same place where [Petitioner] had grabbed her legs to pull her to the end of the bed.
>
> During direct examination at trial, [Petitioner] admitted that he had a sexual encounter with [Victim] on the day in question, but he claimed that the encounter was consensual. [Petitioner] testified that [Victim] had invited him into her room to watch a movie and that they had started talking about relationships. While watching a sex scene in the movie, they became intimate and [Petitioner] licked his finger and rubbed the outside of [Victim]'s vagina. [Petitioner] then suggested that they use lubricant, and she told him to get the lotion. [Petitioner] stated that he touched his penis to [Victim]'s vagina, then stopped and said, "I don't think we should be doing this." He then left the room.
>
> [Petitioner] admitted that he initially lied to police. However, he claimed that he could not think clearly at the time because he "had taken a bunch of medication" before that interview and was afraid after being accused of "taking liberties" with [Victim] According to [Petitioner], the first time he met his attorney, he had told his attorney the same story he told the jury.
>
> On cross-examination, the State questioned [Petitioner] about a recorded telephone call he had made to his wife from jail. During the conversation with his wife, [Petitioner] said he had told his attorney that his bank records would prove that he was at a motel on the day of the alleged sexual assault and could not have committed the crime. When confronted with this information, [Petitioner] testified that he had been lying to his wife at that time and that he had never told his attorney that story.
>
> The jury convicted [Petitioner] as charged for one count each of rape, forcible sodomy, forcible sexual abuse, and witness tampering.

*State v. Reid*, 2018 UT App 146 ¶¶ 2-15, 427 P.3d 1261, (ECF No. 37-1, at 1-2.) *cert. denied*

*State v. Reid,* 432 P. 3d 1225 (Utah 2018). According to Petitioner, his trial counsel resigned when

Petitioner asked him to file a motion to arrest judgment and for a new trial (ECF No. 37-4, at 1.).

4

Petitioner filed a *pro se* motion to arrest judgment on December 22, 2015, alleging, *inter alia*, ineffective assistance of trial counsel and prosecutorial misconduct. *Id*. The trial Court appointed new defense counsel who filed a motion to arrest judgment on April 8, 2016, alleging ineffective assistance of counsel. Counsel and Petitioner both addressed the court at oral arguments on April 26, 2016. (ECF No. 3-6, at 2.) The motion was denied. *Id*. On May 6, 2016, Petitioner was sentenced to indeterminate terms of five years to life for the rape and the forcible sodomy, one year to fifteen years for forcible sexual abuse, and up to five years for witness tampering, all sentences to run concurrently. *Id.*

Petitioner raised two categories of claims on appeal: (1) the conviction was obtained by prosecutorial misconduct, including the repeated use of leading questions over sustained objections, the introduction of prejudicial hearsay, and improper closing arguments, and (2) ineffective assistance of counsel, including failure to adequately mitigate the prejudicial effect of the protective order, negligently opening the door to allow the prosecution to impeach Petitioner by use of a recorded jail call, and stipulating to allegedly improper jury instructions. In addition to presenting these issues independently, Petitioner argued that the cumulative impact of the errors was unfairly prejudicial. *See generally* ECF No. 37-9.

In rejecting Petitioner's claims of ineffective assistance of counsel, the court of appeals held that regardless of whether counsel's performance was ineffective, "[Petitioner] has failed to show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'". *State v. Reid*, 2018 UT App 146, ¶ 20 (citing *Strickland v. Washington*, 466 U.S. 668, 694, (1984)).

The court also rejected Petitioner's claims of prosecutorial misconduct. The court found that a "handful" of leading questions asked by the prosecution "can hardly be said to rise to the

5

level of prosecutorial misconduct, let alone prosecutorial misconduct so egregious that any reasonably competent defense counsel would have moved for a mistrial." *Id*. at ¶ 44. Further, Petitioner's objections to the leading questions had been granted, and that Petitioner had not requested any additional remedy. *Id*. The court found that Petitioner had not objected to the hearsay he challenged on appeal and that the statement "was already properly before the jury [because the original declarant had already testified to the statement, which] lessened the impact of the hearsay offered by the grandmother and made the decision not to intervene eminently reasonable on the part of both defense counsel and the court." *Id.* at ¶ 47. Finally, the court of appeals ruled that none of the improper closing arguments were so improper that they required intervention by the court or counsel, and that even if they had, "there is no reasonable likelihood that the jury would have reached a more favorable verdict in this case absent the challenged comments." *Id*. at ¶ 50.

Petitioner filed a *pro se* petition for certiorari, offering three questions for review: (1) did the Utah Court of Appeals violate Petitioner's Constitutional rights declining to review the "Entire Trial Record," (ECF No. 37-10, at 16-19); did the Utah Court of Appeals improperly apply the standards for prejudice and deficient performance under *Strickland*, (*id.* at 20-26*)*; and (3) did the Court of Appeals violate Petitioner's Constitutional rights by rejecting his claims of plain error? (*Id*. at 26-28.) The Utah Supreme Court denied certiorari. *State v. Reid,* 432 P. 3d 1225.

Petitioner next raised eleven issues in his post-conviction petition ("PCP") under the Utah Post Conviction Relief Act ("PCRA"). The PCP court rejected the first ten issues on procedural grounds. Nine issues, including fraud, were dismissed because they could have been raised at trial or on appeal. (ECF No. 37-12, at 4-6.) Petitioner's claim of factual innocence was dismissed because Petitioner had not complied with the separate pleading requirements of the PCRA. *Id.* at 6.

6

Finally, the court rejected Petitioner's conclusory claims of ineffective assistance of counsel failed to show that counsel had performed below an objectively reasonable standard. *Id*. at 8-9.

On Appeal of the PCP, Petitioner argued that he was exempt from the procedural bar because his allegations qualified for exemptions for fraud (ECF No. 37-16, at 14-15) and a total denial of counsel at a critical stage of the proceeding. *Id*. at 21. Nevertheless, the Court of Appeals affirmed:

> The district court noted [Petitioner's] conclusory allegations in his response to the State's summary judgment motion and stated that they were 'particularly speculative, lacking in evidentiary support, and in most respects substantively erroneous.' Because [Petitioner] fails to address the posture of the case or the rationale of the district court, he cannot carry his burden of persuasion on appeal.

(ECF No. 37-15, at 4-5.)

Petitioner raised two new issues in his petition for certiorari: (1) the lower courts abused their discretion by denying an evidentiary hearing on Petitioner's Brady and conflict of interest claims, (ECF No. 37-17, at 19-27); and (2) "U.S. Constitutional Sixth and Fourteenth Amendment Right to Self-Representation Applies to Alleged Waiver of Counsel And Subsequent Amicus Appointment of Counsel." *Id*. at 26-28. The Utah Supreme Court denied certiorari. (ECF No. 37-18.)

## II. ISSUES

Petitioner raises thirteen grounds for relief in the Petition: (1) the conviction was obtained by the prosecutorial misconduct, including fraud, (ECF No. 15-6, at 6-8); (2) the conviction was obtained by unconstitutional suppression of clerk's certificate transcripts or record, (*id*. at 9-10); (3) the conviction was obtained by the unconstitutional denial of assistance of counsel during critical stages of criminal proceedings, (*id*. at 10-11); (4) Petitioner received ineffective assistance of attorney to defense counsel at his motion to arrest judgment, (*id.* at 12-13);

7

(5) Petitioner received ineffective assistance of counsel at sentencing, (*id.* at 13-15);

(6) Petitioner received ineffective assistance of trial counsel, (*id.* at 16-19); (7) the conviction was obtained by prosecution's unconstitutional abuse of legal process, bad faith, and bad conduct, (*id.* at 19-20); (8) the conviction was obtained pursuant to an unconstitutional arrest, (*id.* at 20-22); (9) Petitioner is actually innocent, (*id.* at 22-23); (10) the trial court abused its discretion, committed plain errors and acted with prejudice, (*id.* at 26); (11) Petitioner received ineffective assistance of appellate counsel, (*id.* at 26-28); (12) Petitioner was denied due process because the record on appeal was provided in an unreadable format, (*id.* at 28); (13) Petitioner was denied the right to present a complete defense because the state courts have denied every request for an evidentiary hearing, (*id.* at 28).

### III. PROCEDURAL DEFAULT

#### A. Standard of Review

The United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Claims must be presented to the highest state court to satisfy the exhaustion requirement. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citing *Coleman v. Thompson*, 501 U.S. at 731.) Federal courts lack jurisdiction to review claims that have been rejected by state court decision on independent and adequate state procedural grounds. *See Coleman v. Thompson*, 501 U.S. at 729-730. A state court finding is independent when the state law is the "exclusive basis for the state court's holding." *Duvall v. Reynolds*, 139 F.3d 768,

797 (10th Cir. 1998) (quoting *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995)). "A state court finding of procedural default is adequate if it is "strictly or regularly followed" and applied "evenhandedly to all similar claims." *Id*. at, 797 (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)). Utah's PCRA and procedural rules are independent and adequate state procedural ground[s] for dismissal of federal habeas claims. *Fairchild v. Nelson*, No. 2:17-CV-1317-DN, 2019 U.S. Dist. LEXIS 149734, at 12-13 (D. Utah) (citing cases).

Absent exceptional circumstances or where plain error has occurred, claims are procedurally barred from Utah appellate courts if they have not been adequately pled to the district courts. *See Donjuan v. McDermott*, 2011 UT 72, ¶ 20-21, 236 P.3d 839 (Utah).

Utah's Post-Conviction Remedies Act states in relevant part:

> A person is not eligible for relief under this chapter upon any ground that:
> (a) may still be raised on direct appeal or by a post-trial motion;
> (b) was raised or addressed at trial or on appeal;
> (c) could have been but was not raised at trial or on appeal;
> (d) was raised or addressed in any previous request for post-conviction relief or could have been, but was not, raised in a previous request for post-conviction relief; or
> (e) is barred by the limitation period established in Section 78B-9-107.

Utah Code Ann. § 78B-9-106(1) (2023). "[T]he petitioner has the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." *Id.* at § 78B-9-105(1 )(a) (2023). Also, "[t]he court may not grant relief from a conviction or sentence unless the petitioner establishes that there would be a reasonable likelihood of a more favorable outcome in light of the facts proved in the post-conviction proceeding, viewed with the evidence and facts introduced at trial or during sentencing. *Id*. at § 78B-9-104(2) (2023).

9

## B. Analysis

### 1. All of Petitioner's claims are procedurally defaulted.

The Utah state courts rejected eleven of Petitioner's thirteen federal claims on independent and adequate state law grounds. Petitioner's PCP presented eleven claims (which would later become the first eleven claims of his federal Petition). The PCP court granted summary judgment against each of Petitioner's first eight claims, and his tenth, because the claims could have been, or were, raised at trial or on appeal. (ECF No. 37-12, at 4-6 (citing Utah Code § 78B-9-106(1)(2023)).) Petitioner's ninth claim was dismissed because Petitioner had failed to comply with PCRA procedural requirement that claims of factual innocence to be pled separately from other claims. *Id.* at 10, citing Utah Code § 78(B)-109-104(3)(2023). Petitioner's eleventh claim was dismissed on summary judgment because his conclusory claims did not satisfy the PCRA pleading requirements. *Id.* at 8 (citing *Kell v. State*, 2008 UT 62, ¶ 43, 194 P.3d 91 (Utah)). The PCRA contains an exception to the procedural bar if the failure to raise a claim at trial or on appeal is due to ineffective assistance of counsel. Utah Code § 78B-106(3). "When a petitioner invokes this exception, a post-conviction court may consider the ineffective assistance claims only in the context of a claim that appellate counsel was also ineffective for failing to raise those claims of trial counsel's ineffectiveness on direct appeal." *Alvarez-Delvalle v. State*, 2015 UT App 126, ¶ 5, 351 P.3d 104. The PCP court relied exclusively on the PCRA and associated case law to dismiss Petitioner's PCP claims. The PCP court cited no federal law.

The PCRA procedural bars are independent and adequate grounds for dismissing habeas claims. *Fairchild v. Nelson*, at *12-13. The Utah Court of Appeals affirmed the dismissal of Petitioner's claims. (ECF No. 37-15, at 2.) Therefore, this court lacks jurisdiction to consider any of Petitioner's first eleven claims. *See Coleman v. Thompson*, 501 U.S. at 729-730.

10

Furthermore, Petitioner failed to exhaust any of his claims for federal review. Both on direct appeal and in the state habeas proceedings, Petitioner presented different claims to the Utah Supreme Court than he had presented to the Utah Court of Appeals.

On direct appeal, Petitioner's counsel presented two claims: (1) the conviction was obtained by prosecutorial misconduct, including the repeated use of leading questions over sustained objections, the introduction of prejudicial hearsay, and improper closing arguments, (ECF No. 37-9, at 23-43); and (2) Petitioner received ineffective assistance of counsel, including failure to adequately mitigate the prejudicial effect of the protective order, negligently opening the door to allow the prosecution to impeach Petitioner by use of a recorded jail call, and stipulating to allegedly improper jury instructions. *Id*. at 44-57. Petitioner further argued that the cumulative impact of the errors was unfairly prejudicial. *Id*. at 57-59.

Petitioner's *pro se* petition for certiorari offered three different issues for review: did the Utah Court of Appeals (1) violate his constitutional rights declining to review the "Entire Trial Record," (ECF No. 37-10, at 16-19); improperly apply the standards for prejudice and deficient performance under *Strickland*, (*id.* at 20-26*)*; and (3) violate Petitioner's Constitutional rights by rejecting his claims of plain error? (*Id*. at 26-28.) The issues presented to the lower courts were unexhausted because they were never presented to the Supreme Court, and the issues presented to the Supreme Court were procedurally barred, because none of them had been presented to the lower courts. *See Donjuan v. McDermott*, 2011 UT at ¶¶ 20-21. Therefore, none of the issues Petitioner raised on direct appeal were properly exhausted.

Petitioner's PCP presented eleven new claims, (which would later become the first eleven claims of his federal Petition). The PCP granted summary judgment against each of Petitioner's first eight claims, and his tenth, because the claims could have been, or were, raised at trial or on

11

appeal. (ECF No. 37-10, at 4-6 (citing Utah Code § 78B-9-106(1)).) Petitioner's tenth claim was dismissed because Petitioner had failed to comply with PCRA procedural requirement that requires claims of factual innocence to be plead separately from other claims. *Id*. at 10, (citing Utah Code § 78(B)-109-104(3)(2023)). Finally, Petitioner's eleventh claim was dismissed on summary judgment because his conclusory claims were inadequately pled. *Id.* at 8 (citing *Kell v. State*, 2008 UT 62, ¶ 43, 194 P.3d 91 (Utah)). The Court of Appeals affirmed. (ECF No. 37-15, at 2.)

Again, Petitioner raised new different issues in his petition for certiorari: (1) the lower courts abused their discretion by denying an evidentiary hearing on Petitioner's *Brady* and conflict of interest claims, (ECF No. 37-17, at 19-27); and (2) "U.S. Constitutional Sixth and Fourteenth Amendment Right to Self-Representation Applies to Alleged Waiver of Counsel And Subsequent Amicus Appointment of Counsel." *Id*. at 26-28. The Utah Supreme Court denied certiorari. (ECF No. 37-18.) The issues presented to the lower courts were never properly exhausted because they were never properly presented to the Utah Supreme Court, and the issues presented to the Utah Supreme Court were procedurally barred because none had been presented to the lower courts. *See Donjuan v. McDermott*, 2011 UT at ¶¶ 20-21. Therefore, none of the issues Petitioner raised his collateral proceedings were properly exhausted.

**2. Petitioner fails to assert an excuse for his procedural default.**

A procedural bar may be avoided if a petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *Thomas*, 218 F.3d at 1221 ("This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'") (quoting *English v. Cody*, 146 F.3d 1257,

1259 (10th Cir. 1998)(alteration in original)). Petitioner invokes ineffective assistance of counsel, lack of resources and fundamental fairness to excuse his procedural defaults.

### a. Cause and prejudice

A petitioner may be able to overcome procedural default if he can establish "cause" to excuse the procedural default and demonstrate that he suffered "actual prejudice" from the alleged error. *Davila v. Davis*, 582 U.S. 521, 524 (2017). "[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Where the alleged cause and prejudice is ineffective assistance of counsel, the petitioner must satisfy both prongs of *Strickland*'s familiar two-pronged standard: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland,* 466 U.S. at 687-88. Where there is no constitutional right to counsel, attorney error cannot provide cause to excuse a procedural default. *Davila*, 582 U.S. at 529; *Sayed v. Trani*, 731 F. App'x 691, 697 (10th Cir. 2018); *Ross v. Moffitt*, 417 U.S. 600, 619 (1974) ("[R]espondent was denied no right secured by the Federal Constitution when North Carolina refused to provide counsel to aid him in obtaining discretionary appellate review."). The Supreme Court has made clear that attorney performance is strongly presumed to have been adequate. *Strickland,* 466 U.S. at 690. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila,* 582 U.S. at 533. A strategic decision to forgo a claim on appeal is only deficient performance if the claim was plainly stronger than those actually presented to the appellate court. *Id*.

Under Tenth Circuit case law, lack of legal resources and knowledge (including petitioner's own misunderstanding) are circumstances that do not carry petitioner's burden to

13

show cause. *Gilkey v. Kansas*, 58 F. App'x 819, 822 (10th Cir. 2003) (unpublished) (holding limited legal knowledge insufficient to show cause for procedural default); *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991) (holding petitioner's *pro se* status and corresponding lack of awareness and training on legal issues do not constitute proper cause for not previously raising claims). "Indeed, these are factors . . . that are *internal* to Petitioner's defense." *Ardon-Aguirre v. Sorensen*, No. 2:12-CV-914 DB, 2013 U.S. Dist. LEXIS 150269, at *11 (D. Utah October 18, 2013) (emphasis in original).

Meanwhile, to demonstrate prejudice, "'[t]he habeas petitioner must show not merely that … errors … created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Butler v. Kansas*, 57 F. App'x 781, 784 (10th Cir. 2002) (unpublished) (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original)). The petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694.

Petitioner has not met his burden of showing that objective factors external to the defense impeded his meeting state procedural demands for any procedurally defaulted issues. Petitioner continues to maintain that his claims are fully exhausted, and so fails to fully address the issue of cause and prejudice. However, Petitioner asserts that the state courts applied the wrong legal standard to review his claims of ineffective assistance of counsel. (ECF No. 41, at 13-14.) Even if this argument could be liberally construed as a claim that ineffective assistance counsel supplies cause and prejudice to excuse his procedural defaults, it would still fail. Petitioner argues prejudice may be presumed where there is a total denial of counsel at a critical stage of the proceedings, and when an attorney's assistance is infected by a conflict of interest. *Id*.

14

Petitioner fails to adequately plead either contention. Throughout his appeal and post-conviction proceedings, he has argued he was denied any representation at critical stage of the proceeding because his trial counsel resigned shortly after trial. *See, e.g.*, ECF No. 41, at 13-14 (citing *U.S. v Cronic*, 466 U.S. 648, 658-659 (1984)). However, Petitioner never provides a definition for a "critical stage" of the proceeding, nor any analysis to show that the period of his deprivation might have qualified. Nor does Petitioner identify any meaningful consequences of his temporary lack of representation. Petitioner was represented for his jury trial, for his motion to arrest judgment, his sentencing, and on appeal. Although Petitioner complains that he was forced to file a *pro se* motion to arrest judgment after trial counsel resigned, that motion was withdrawn and replaced by a motion prepared by his newly appointed counsel. *See* ECF 37-15, at 1. In contrast, the defendants in *Cronic* were not represented until the day of trial when an out-of-state attorney eventually agreed to represent the defendants with the assistance of the local bar even though he had not had an opportunity to "to prepare the case or to familiarize himself with local procedure." *United States v. Cronic*, 466 U.S. at 660. "[O]nly in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (citing *Cronic*, 466 U.S. at 659.) Put simply, Petitioner has not pled facts to suggest that his case presents a deprivation comparable to *Cronic*. Therefore, this court has no basis to conclude that the period when Petitioner was temporarily without representation was a "critical stage" of the proceeding.

Nor has Petitioner adequately supported his claim that the alleged conflict of interest requires a presumption of ineffective assistance of counsel. *See, e.g.*, ECF No. 41, at 13-14 (citing *Mickens v. Taylor*, 535 U.S. at 166). In *Mickens*, the defendant's trial counsel had

15

represented the victim at the time of the murder. *Mickens* at 164. The Supreme Court rejected the defendant's argument, that he "need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance." *Mickens,* at 170. Petitioner makes a similar argument here. However, like the defendant in *Mickens*, Petitioner has not established that the alleged conflict of interest adversely affected his counsel's performance. Therefore, Petitioner has not plead sufficient facts to supply cause and prejudice to excuse his procedural default.

### b. Miscarriage of justice

A petitioner may also overcome the procedural bar if he can show that his conviction resulted in a "fundamental miscarriage of justice." *See Thomas*, 218 F.3d at 1221 (alteration omitted) (citation omitted). A fundamental miscarriage of justice may be proven by actual innocence where a petitioner can show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To be plausible, an actual-innocence claim must be grounded on solid evidence not adduced at trial. *Calderon v. Thompson*, 523 U.S. at 559 (citing *Schlup,* at 324). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Id*. Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected. " *Id.* (citation omitted).

Petitioner maintains that the evidence produced at trial by the prosecution was fraudulent, but offers no new reliable evidence of his innocence. See ECF No 15, at 21-22. Instead, Petitioner argues that his counsel must have colluded with the prosecution as evidenced by his counsel's failure to emphasize irrelevant and/or minor inconsistencies in the record. *Id*, at 22;

16

ECF No. 41, at 17-18 (arguing that the court clerk's supplemental index was fraudulent because it omitted the words "And For a New Trial" in its description of "Petitioner's Motion to Appeal Conviction/Arrest Judgement and for a New Trial"). Petitioner's rehashing of the evidence in state proceedings falls far short of proving his actual innocence. Therefore, Petitioner has not established that his actual innocence requires that his procedural defaults be excused to avoid a miscarriage of justice.

### IV. CONCLUSION

Petitioner's claims fail to state a claim upon which relief can be granted by federal courts.

**IT IS THEREFORE ORDERED** that Respondent's motion to dismiss is **GRANTED.** Petitioner's action **DISMISSED WITH PREJUDICE**.

**IT IS ALSO ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 1st of September, 2023.

BY THE COURT

_____
CHIEF JUDGE ROBERT SHELBY
United States District Court